The right to a jury trial is one of the most important facets of our criminal justice system. In fact, it's probably the most important facet. And that presupposes, though, that it happens in the right way. That is, the parties present the evidence, the judge instructs on the law, and the jury returns a verdict, and then we all abide by that. But that broke down here. It broke down because critical evidence on Mr. Messano's innocence was not presented to the jury. It was kept from the jury. So the jury that considered Mr. Messano's guilt or innocence and ultimately returned a guilty verdict didn't have the full story. It didn't have all the defense evidence, didn't have critical defense evidence. I'd like to address two facets of that evidence today. First, there was that whole incident that happened just three days before he was arrested, where he had an Internet communication with some of them themselves, this 11-year-old girl in Virginia. During that communication, it appeared that this girl was being sexually abused, and it also appeared that the girl's father had offered this girl up to him for sex if he would come to Virginia. What did he do? Well, he told the girl that she needed help. He sought to intervene by calling Virginia Child Protective Services, and he wanted no part of that. What was he charged with? He was charged with almost exactly the same type of scheme, going on the Internet, communicating with someone who represented themselves as a little girl, and soliciting sex. His defense was that with respect to the charge defense, he never believed that Agent Cardenas, the FBI agent posing as a minor girl through this whole period of time, was actually a minor girl. And in fact, there wasn't much evidence to back that up. So what was this? This was sort of evidence, I guess you might call it reverse 404B evidence, but evidence going to the same type of pattern that shows, no, when he actually believes this person is a minor, he does not have sex with her. Now, the district kept that evidence out on the basis of a lack of similarity? That was one of the state of bases that he kept it out. He said that on some level that because this involved a father and travel and violence and coercion, whereas the charge defense, well, persuasion, that it was too dissimilar. But that's a way that's at a level of similarity that is way too high to meet a threshold for evidence. But we're talking about the critical defense evidence. There's a right to present. There's a constitutional right to present evidence that's going to show his innocence. But, Counsel, he was able to testify to pretty much the facts that you've relayed to us. He was able to testify that he, that often people on the Internet, or he even had the FBI agent to admit that often people on the Internet are posing as minors when they are, in fact, adults. And he was able to testify regarding the critical facts that you're relaying to us, wasn't he? I beg to differ, Your Honor. Qualitatively, this evidence is way different. This is evidence that couldn't be characterized as self-serving. We have evidence here that, yeah, he communicated with this little girl, and he declined having sex with her. How much of that was actually admitted? None of it. What was admitted into the record? None of it. The fact that he, that people portray themselves as being adults, as being minors, and they're actually adults. Oh, that part was in it, this particular incident. And the fact that he's communicated with people on the Internet who portrayed themselves as adults, as minors and were adults. Did that come in as well? That came in only through his own testimony. There was absolutely no corroboration for that. And, of course, the government derided that during closing argument as after the fact self-serving testimony by the defendant. The whole Virginia episode was kept out. Exactly. The jury had no inkling of that at all. And it happened, like I said, three days before. So on every matrix that you would necessarily consider for initialized evidence, similarity, proximity, materiality, it was right there. There was absolutely no reason to keep this out. Our standard of review is abuse of discretion. That's correct. It was abuse of discretion in terms of excluding the evidence. It's de novo in terms of whether this comes under 404B. But I submit that there can be no larger abuse of discretion than excluding evidence that's constitutionally required to be admitted. This was part of his defense. The standard for admitting this evidence has to be very, very low because, like I said, the Constitution requires that evidence that shows his innocence, probative evidence of innocence, must be admitted in terms of his trial. And you can't use some technical evidentiary rule to keep it out. In Chambers v. Mississippi, you can't even say it can't even pass Oski's Church, they will keep out a whole class of evidence if it's relevant defense evidence. In your view, how dissimilar must it be in order to justify the exercise of discretion to exclude the evidence? Where it's relevant defense evidence, I would submit that the degree of similarity has to be at a very general level. Any – I would submit that any evidence that showed communication over the Internet with someone who purported to be a minor would be similar enough, just on that level. What case authority are you relying upon to support your similarity argument? Well, Your Honor, actually, in that case I cited in the 28J letter. Give me your best case. Give me your best case authority for your proposition. I suggest you look at DINGRA, 371 F. 3rd, 557, in terms of similarity in this part. And then I suggest that you look at a – What's the name of that case, 371? DINGRA, D-H-I-N-G-R-A. In that case, and that illustrates the point perfectly. In that case, it was a prosecution that sought to use evidence. It was exactly the same charge as this case, travel, solicitation over the Internet to have sex with a minor. And in that case, they introduced a prior incident where this guy had used the Internet to solicit sexual contact. This person wasn't a minor because she was 17 at that time, and in New Mexico, I guess that was legal. And he argued on appeal that that made it too dissimilar to use, that the fact that this conduct was legal made this – made it too dissimilar for the prosecution to use it. This Court held no, that his efforts to distinguish it was unavailing, notwithstanding the fact that the conduct was legally permissible, the prior incident was highly probative of its intent with respect to the present act. Now, what language are you relying upon to support your argument regarding the level of similarity that's required? What language are you relying upon in this case? Well, I don't know that they specifically say that this level of similarity is required, but I think you can infer that quite directly from the level of similarity between the charged incident in that case and the uncharged incident that they allowed. Well, I think this case supports the proposition that the district court has discretion in determining the level of similarity. Would you agree with that? I would agree that that's to some respects true, but I would also submit that the analysis is not exactly identical here. But this is the case you cited when I asked you for your best case, though. Well, that was one of the cases I was about to cite, another case as well, Your Honor. Well, I can't pronounce it. It's Abba Musallam, 722nd F2nd at 912. That suggests that the level of scrutiny that the district court gives to 404B evidence introduced by the defendant is much less than that required when the evidence is introduced against the defendant. But didn't that case involve a third party? That was evidence regarding a third party, wasn't it? That's true. But the analysis is the same. The analysis is that when the prosecution uses 404B evidence against the defendant, there's much greater prejudice or danger of prejudice that the jury won't use that as evidence of propensity and will neglect them because of that. That danger doesn't exist. Is that the Second Circuit case you're talking about? No, this actually was, I believe it was a Ninth Circuit case. There's certainly a second circuit case, but the Ninth Circuit cites that with approval. Excuse me, McCourt, 925 F2nd at 1236. That's exactly the point. I think that when this is this evidence, the whole analysis has to be different because now we're talking about a constitutional right to present evidence. Are you going to address the FBI's? Yes. The other critical category evidence that the jury never heard in this case because the government objected to its introduction and the court sustained objection was that when Mr. Lozano was interviewed after his arrest, he mentioned four people. He mentioned that he was corresponding or communicating with about 15 people over the Internet at the time. And four of them claimed to be minors. One, of course, was that little girl in Virginia. One was the charge, Agent Cardenas, Ashley, and the two others used Internet names of Don with a number. And then Eliana. Let me ask you this. Is the record clear that his original contact with the person in Virginia was with the daughter and not with the father? That was a proffer. The defense proffered that. And at the time, they were trying to get the admission. But they did proffer that the original contact was with the daughter. That's correct. All right. So getting back to Don and Eliana, he said at the time that he believed these four people were, well, he believed that since you were minor or adults posing as minors and that testimony came in, what didn't come in was that the FBI subsequently followed this up and said, by the way, yeah, you know, he was right. These were adults. One was one might think was a 67 year old man. Well, that tells us it tells us that Mr. Simon's defense that he can tell because he apparently spent much of his life online during these Internet chats. And he he could tell when someone was pretending to be a minor and someone wasn't. And this was just absolute corroborative evidence of his ability to do so, which is actually critical to his defense, because his defense was, I can tell the difference between a minor and adult posing as a minor. And I knew that Ashley was an adult posing as a minor. I knew Don and Eliana were adults posing as minors. And he did say that. But what the jury didn't hear was, oh, yeah, he was right. They were minors. Yeah. I looked at that. They found they were minors. That would help. I would have bolstered his defense immeasurably. And it close to what was already a close case. We had a real world demonstration that, yeah, he he wasn't telling. He was telling the truth. He did have that ability. And the FBI corroborated that there was no reason to keep that up. That was critically relevant. And the court sustained it as irrelevant. That that's unfathomable, really. Evans went to the heart of the case. The government argues that you that you didn't argue in the district court that it would show that he knew. When somebody was an adult posing as a child, is that you have a response to that? Certainly that was the whole tenor of the defense. So when he's trying to elicit that information, it could really only have purpose. And when the court sustains a relevance objection, I submit that he's made a sufficient proper. The judge was not really receptive to long discussions on the record. Old Agent Cardenas was the one posing as Ashley. Does the record reflect how old Agent Cardenas was the one who was posing as Ashley? Reflects that she was posing as a 13 year old 13. Does the record reflect what her actual age was? Oh, no, it doesn't. Well, she testifies to the jury could see how old she was. But in fact, when they set up the meet with the meeting, the government used a different person to pose as Ashley. Oh, I see. I see. I think that might be in the record. I think she was about 25. I could be posing as Ashley. Yes. I was wondering how the record may not reflect it, but I just had a thought. I wondered how old the person was who posed as Ashley at the time of the arrest. She was clearly not a teenager, but she was under 30 is my recollection. And I do believe it's in the record, but I'm not sure. Well, sorry, it's not part of the argument. So in sum, what we have two very important classes of evidence that went to the heart of the defense, that the jury never heard, that Mr. Masano never got to present to corroborate this defense, and what was otherwise a close case. How was the district court made aware of the fact that the FBI had in fact corroborated two of them were adults? I think that was apparent from the prior discussions, but it certainly should have been apparent by the. I don't believe there was a proper made at the time of the question. I could be wrong. What was it? Was a question asked and then objected to or what? How did this whole thing? The question was asked a number of times and objected to. And actually the defense were asked in a leading matter once. That's something that affected. Didn't you find out that this person was a 67 year old man? And the objection was sustained and actually court lectured the defense lawyer for trying to get this in more than once. So you're asked to argue the objection. I don't believe so. It was just irrelevant. Sustained, irrelevant, sustained, irrelevant, sustained. It was a lot more. Actually, let me let me find the correct reference. Well, I just I just want to make sure that that I know whether or not plain error attaches to this. This this alleged error. That's fine. We agree that it's plain error. No, no, I would not agree at all. And why not? Because the intent of the defense was was clear from the customer. The objection was not fleshed out in terms of the relevance of this testimony. If the objection merely was that Mr. Masano intended to testify that he believed that these two individuals were adults opposing as minors and did not go on to say and the FBI confirmed this. How was the how was the issue brought before the district court for resolution? The issue was brought before the district court resolution when the defense counsel proffered the question. There's there's no case where I think if you examine the government's authority that says that once the court sustains a relevance objection, the counsel has some further obligation to make a proffer at that point to preserve their. But he he brought brought to the court's attention by proffering the question in the context of the trial. The relevance of it was clear. It's not like the district court judges can be a little obtuse. And we need you to flesh out what you're what you're understanding. In the context of this trial, I don't think that the judge wasn't fighting that kind of fleshing out. May it please the court. John Owens for the United States. In this case, the district court permitted the defendant, Sean Masano, to mount a vigorous defense. And the question for this panel is whether some of the limits on that defense require this court to throw out the jury's verdict and remand the case for a new trial. Did you try this case? I did not, Your Honor. But I'm ready to argue with you, Your Honor. I'd like to first begin with the Rule 404B issue. Now, at trial, the defendant introduced significant Rule 404B evidence. And specifically, the defendant testified about previous Internet communications that he had. He testified that both in chat rooms and through instant messaging, he spoke with people who were adults or who were people indicating they were minors. And that when he met them in person, they turned out to be adults. And at Governments Excerpts of Records 76 through 82, the defendant talks about his communications with Jeannie, Francesca, and Michelle. Now, based on these earlier acts that the defendant had, defense counsel was able to argue at trial that when he was communicating with Ashley in L.A., which is the subject of this case, he thought that she was an adult based on these previous communications that he had. The jury did know that he was – that he did have the ability to discern that someone's screen persona was not the person. Correct. He testified that, for example, with some of these people, they said they were a cheerleader. And then when he actually met them, they were a 30-year-old woman. He testified about three individuals that he met. Now, what the district court did not permit the defendant to do was get into the Virginia account or the Cuddle Bear account. That was the name of the e-mail address. And what Judge Rafiti did was he believed, and he was well within his discretion to do so, that it was not sufficiently similar under Rule 404B. Now, the defendant in this case framed it as a 404B argument and said, Your Honor, we need to introduce this as 404B. And Judge Rafiti applied the case law and applied the standards and believed it was not sufficiently similar. What's our standard review for that decision? For that issue, it's abuse of discretion. And what Judge Rafiti believed was it was not sufficiently similar. And first and foremost, the significant difference is there's a third party involved. Again, if we believe the defendant's story, the father is involved. In cases like DINGRA and some of the other cases that have been cited, it's one-on-one communications and contact. In DINGRA, he's first with the charge, was with a 13-year-old. The 404B evidence brought in by the government was with a 17-year-old. There was no negotiation or involvement with a third party. And, in fact, in this case, actually, there was apparently a fourth party. At Excerpt of Record, page 39, defense counsel mentions that there was a friend of the father named Chris who was somehow involved in this as well. So, actually, there's a fourth party. Again, very different than the actions in this case. When it was the one-on-one communications, Francesca, Jeanne, Michelle, those came into evidence. When there was this very strange – It came in only through the testimony. I mean, just a minute ago, you said, well, if we believe his testimony. And, of course, that's the question. I suppose the jury – it's whether the jury believes his testimony. And I suppose the fact that the FBI had confirmed that two of the ones that he said he talked to only as children, but he knew they were adults. I would think that would be strongly corroborative. Now, that's to this – I would frame that as the second issue, Your Honor, and I would argue that's a plain issue. And if I may get to that in just a moment. Because I will address that, Your Honor. Counsel, in terms of the first issue, the Virginia issue that we're talking about, wasn't there some concern regarding the content of the e-mails and whether or not they were clear enough to really give a clear picture of what was happening in the exchanges? Yes. One of the things that Judge Rafiti said was he thought it was ambiguous as to exactly what was going on. Now, the defendant was going to offer, apparently, testimony to kind of flesh out the story. So it wasn't merely the e-mail that he wanted to or the instant message sheet that he wanted to introduce. He also wanted to introduce some, I guess, some testimony about it. So maybe the defendant would be able to clarify some of the ambiguity in the transcript. But I think the important point is, is that under the Ninth Circuit's precedent, and I would direct this Court to the Perkins decision at 937 F. 2nd, 1394. And it's mentioned in the government's briefs. In Perkins, the district court was confronted with a defendant who wanted to introduce 404B evidence. Frankly, much more similar than the 404B evidence in this case. The district court exercised its discretion, did not admit the evidence, and the Ninth Circuit affirmed. Now, defense counsel today, in its briefs, has indicated, well, when the defendant wants to introduce rule 404B evidence, there's a different standard. It's a lesser standard. And they cite some language from the Second Circuit case. A couple of things about the Second Circuit case, and I'm not even going to try to pronounce it. But first, it's actually dicta in that case. In that case, the Second Circuit actually affirmed the district court's judgment on 403 grounds. So anything they said about 404B was dicta. And second, in the Perkins decision, which is a Ninth Circuit decision, the court never made this different standard, depending on who's trying to introduce the evidence. They applied the same standard. In addition to the 404B ruling, Judge Graffiti excluded it also on 403 grounds. And again, he was well within his discretion in doing so. If, well, I call it the Cuddle Bear evidence. That's how I can remember which name we're talking about. If the Cuddle Bear evidence had come into evidence, it would have created a trial within a trial. On the one hand, the defendant says he was the one who made the phone call. But the government may try to develop evidence to see, well, who actually did make that phone call? For example, the defendant at trial testified that he did not get along with his roommate at the time. Quote, his relationship was not very good at all, very strained. And that's at trial transcript, November 22nd at page 179. All kinds of questions get risen by this evidence. Yes, there is a phone record that he called Virginia Child Protective Services. But why did he call? The defendant's going to indicate, well, because he was concerned about this child. The government might argue, well, actually, he's trying to figure out how to get away with the crime. The Cuddle Bear evidence, the Virginia evidence, simply raises more questions than it answers. And that's the very reason why Judge Graffiti was at his discretion, to prevent a trial from erupting within a trial. And finally, even if Judge Graffiti abused his discretion on both issues, on both the 404 ruling and the 403 ruling, any error was harmless. Now, I know defense counsel has indicated in this case, well, there was a hung jury in the first trial. So, therefore, any error requires trial. But I don't think that's the proper analysis. The proper analysis is that the exclusion of this piece of evidence, what impact, if admitted, would it have had on the trial? Now, one of the major themes of the defendant in this case was the America Online Parental Controls. He testified, and defense counsel argued in an opening statement and in closing argument, that the America Online Parental Controls made the defendant believe that he would not be communicating with children in these chat rooms. That was a big part of the defense, being, well, I thought Ashley in L.A. was an adult, because how, if she was a minor, how could she get through the parental controls? Well, that's their defense here, but if you introduce the Virginia evidence or the Cuddlebore evidence, he's saying, well, I did have multiple communications with a child. So, on the one hand, the defense is, I never expected to communicate with children, therefore, I didn't think Ashley was a child. On the other hand, occasionally I did have conversations with children. The two simply don't go together. They undercut each other, quite frankly, and so when addressing the issue, if you have to reach the harmless error analysis, which I don't think you do, if you do, there was no reversible error on that ground. Now, I'd like to address, Judge Canby, your questions about the Ariana QT and the Don 3344. I think first it's important to recognize what the standard of review is. It is plain error. The district court never had, was given the argument that's now made for the first time on appeal that this was a corroboration theory. The case of the United States v. James, upon which they rely. I mean, he testifies, look, I've talked to other people who pretended they were children, but in fact they were adults. And they were shown to be adults. I mean, what else could it be but corroboration? How did it unfold, I guess, is the question. Sure. The first time the issue came up, actually, was the government's executive record, 224 to 226, in which the defendant indicated that he was going to introduce some testimony about those two accounts. But the issue, the specific issue that the government tracked down who these people were or verified they were adults, that was not raised then. Then during trial, at two points, I would direct the Court's attention to executive record 168 to 169. That occurred on November 21st. That relates to the Don 3344 account. And then on executive record 142, that's from November 22nd. Those are the two times that it came up. And the way it would come up would be the following. For example, when Mr. Marsano was on the stand, and I'm paraphrasing here, he would say, did you think that Don 3344 was an adult? Your Honor, the reason why it's relevant is not because it goes to a state of mind, but it goes to corroborate what he was thinking. That was never presented to the district court. And on the fly in trial, when you're offering a theory, I understand the Court believes that it's clear. Honestly, when I first read it, I didn't understand what the theory of admissibility was. It was only after I read James and read the defendant's brief, I kind of got a sense of what their theory of admissibility might be. So I do think it's planar. And if you read the Chang decision, which is cited by the Ninth Circuit, I mean, which is the Ninth Circuit decision, it's clear that there has to be an actual theory of admissibility. And there was no theory of admissibility in this case. The defense counsel could have very easily told the district court. Certainly some are more generous than others. That is absolutely true, Your Honor. But at the same time, they did brief. There were extensives in this case. Brief after brief, motion after motion for reconsideration. At any time, they could have embraced this argument with the district court, and they didn't. Now, to try to do it now on appeal for the first time, that's why we have planar review. That's why we – there is a penalty, in a sense, for not making clear to the district court. But I want to get to the point that, regardless of the standard of review, there was no error here. Now, the defendant indicates that the case of the United States v. James requires this court – required the district court to have admitted the evidence. But James is a case of very limited application. James was what I'll call a true corroboration case. In James, the defendant was charged with aiding and abetting the murder of her boyfriend. She gave a gun to her daughter. Her daughter shot the boyfriend. Boyfriend died. The defendant in that case testified, well, the reason why I gave the gun to my daughter was because the victim, the boyfriend, he had threatened me many times and had made some very violent threats. One time about stabbing out – stabbing someone's eyes out of his head and blinding them. Defense counsel in that case argued, well, the jury should know that, in fact, there's a police report corroborating that very fact, the fact that he threatened about poking out the eyes, because the story seemed so outlandish, the jury might not believe it. The Ninth Circuit said it should have come in under that – those circumstances, because that police report would have directly corroborated her testimony. The Ninth Circuit in a subsequent case of United States v. Lynch, 367 F. 3rd, 1148, talks about some of the limits on James and what James really means. Now, in Lynch, the defendant and his co-defendant, Pizzacello, went out and shot a guy, killed him, and the defendant's defense in that case was, well, the only reason why I did it was because I was scared of my co-defendant, and why was I scared? Because he committed all these violent acts, and he testified about these violent acts. He then wanted to introduce other evidence about other violent acts that he didn't know about, but in a sense would support his – this guy was a violent defense. Ninth Circuit said, time out. Doesn't work that way. James does not apply. In James, there was actual corroboration of what the defendant testified to, and that's the difference between, in a sense, corroboration and support. Certainly, the evidence in the Lynch case, that this guy was a violent guy and done other violent acts, would support his defense, but it wouldn't corroborate it, and there's a – it's not a semantic difference. And when you apply that to this case, you'll see that this case fits in the Lynch box as opposed to the James box. In this case, the defendant testified about these two accounts, that he had online communications with these people, and that he thought they were adults. The evidence he wanted to introduce was that the FBI determined that they were adults. Now, that information – bless you – that the FBI found out that they, in fact, were adults, would not corroborate the fact that they were – had these online communications, and it actually would not corroborate what he was thinking. It's not like a telescope that peers into his mind. Does it support it in a general sense? Yes, it does. But it doesn't corroborate it. And that's what the Ninth Circuit in James said was the key in the Ninth Circuit confirmed in the Lynch decision. Finally, even if there was an error in this case, and even if the standard is abuse of discretion or plain error, it was not an error that would have made a difference in this case. I think it's very important to recognize that in both opening statement and closing argument, defense counsel told the jury that these two accounts were adults. And I would direct the Court's attention to the November 20th transcript at page 18. That's the opening statement. Defense counsel has described these two accounts and then tells the jury, underage girls, not one of them. Adults, adults, both of them. Told the jury this. In closing argument, a very similar statement was made by defense counsel. In a sense, basically he said, you know they're adults and not kids because if they were kids, you'd sit in a courtroom. So in opening statement and closing argument, the jury is told the very evidence that's at issue here. Now, obviously, the Ninth Circuit in any court is not going to review statements by counsel as evidence. But in reviewing whether or not it's a reversible error, I think it is a factor. And there's case law in the government's brief that we cite that indicates that courts do look at the entire picture, including opening statement and closing argument, to determine whether there's a reversible error. And unless the Court has any more questions about that one, I wanted to very briefly talk about the Rule 405 issue. I would just like to point out on the Rule 405 issue that the defendant himself did testify that he never actually dated children while he was an adult. So to the extent that there was any Rule 405 error and the government submits there clearly was not, the very fact they're complaining of now actually was presented to the jury in that case. And unless there are any other questions, I would just like to close by saying that Judge Rafiti is a very experienced district court judge. He considered all of these questions very carefully, and the government would ask this court to affirm his decisions. Thank you, counsel. Thank you. Mr. Barrow. It seems a bit ironic that the government would strive so hard to keep this evidence out and then tell us that it's not prejudicial because, oh, the defense counsel got to argue it. The defense counsel did argue in an opening statement, believing that the evidence would come in. He didn't get the evidence in, and he has to argue it in closing statement without the benefit of any evidence. The court's ruling denied the defense the benefit of this evidence. With respect to the objection, I direct the Court to Excerpt Record 142, where he first tried to get this information in. The question is, and did you have any understanding as to whether the FBI looked into whether these screen names belonged to minors or adults? I did. Government, objection, Your Honor. Just a minute. Objection sustained. So the government doesn't even give a basis for the objection. It's clear that it's not going to allow this in no matter what defense counsel says. Then I have Excerpt Record 168, when defense counsel is questioning the agent. The defense counsel is asking, isn't it true that another screen name, Don 3344, Mr. Masano said, this person claimed to be a minor, and your investigation showed it to be a 67-year-old man living in New York City? Objection, compound irrelevant. The court sustained. And then on 169, again, defense counsel tries to get this in. And one of these people was Don 334, who pretended to be a Southern California 13-year-old engaged in incest with her father, but she was a 67-year-old man. Correct? Government, objection, irrelevant. The court. Why do you ask that question if the court has twice sustained objections to it? Is it irrelevant? Is it correct or not? The jury will disregard the question. So it's clear that the court wasn't entertaining any discussion on this, and it's clear that the court knew exactly what the substance of it was. In sum, what we have here on the two critical issues in this case, whether or not this defendant, Mr. Masano, had any sexual interest in children, which was a part of the government's case, they introduced a video of child porn on his computer to show that very fact, which would be disproved by this Virginia incident, or at least would certainly be evidence of that he didn't have sexual interest in children because here he is offering to have sex with a child, and he's declined it. And the other issue is, can he tell whether or not someone online is a minor, an adult posing as a minor? And the only evidence other than his own testimony that the government provided in closing argument as self-serving and made up after the fact was this FBI investigation, and that evidence was excluded. All right. Thank you, counsel. Thank you to both counsel for a case well briefed and well argued. The case just argued is submitted by the court. That is the last case on calendar, and this session is in recess. All rise. This court for this session stands adjourned.
judges: Canby, Hansen, Rawlinson